STATE of Missouri, Appellant,

v.

Edward VINSON, Respondent.

No. ED 86024.

Missouri Court of Appeals,
Eastern District,
Division Four.

Jan. 24, 2006.

Daniel J. Proost, St. Louis, MO, for Appellant.

Daniel P. Reardon, St. Louis, MO, for Respondent.

ROBERT G. DOWD, JR., Judge.

The State of Missouri ("State") appeals from the judgment granting Edward L. Vinson's ("Defendant") motion to dismiss. The State contends the trial court erred in granting Defendant's motion to dismiss pursuant to the "anti-shuttling" provision of the Interstate Agreement on Detainers

("IAD"), Section 217.490, RSMo 2000,[1] because Defendant waived his protections under the provision. We reverse and remand for further proceedings consistent with this opinion.

On June 27, 2001, Defendant was charged by indictment with twelve counts of felony stealing in violation of Section 570.030 in the Twenty–Second Judicial Circuit Court, City of St. Louis. After Defendant waived arraignment, the case was transferred to Division 16, the criminal assignment division.

On April 22, 2003, the case was assigned to Division 12 for trial, with Judge Dennis Schaumann presiding. The trial court was informed that Defendant was serving a sentence in the federal penitentiary in Marion, Illinois. Judge Schaumann issued a capias warrant to serve as a detainer. The trial court set Defendant's bond at $10,000 and the case was returned to Division 16.

On May 3, 2004, while Defendant was still serving his federal sentence, Defendant's attorney requested that the capias warrant be cancelled and the Defendant be granted a recognizance bond. The State objected to Defendant's requests and the requests were denied.

On May 4, 2004, the circuit attorney executed a written request for temporary custody of Defendant pursuant to the IAD. In compliance with the requirements of Article IV of the IAD, federal authorities granted the State temporary custody of Defendant. Pursuant to the conditions of custody agreement, Defendant was not to be released on bond. Defendant was delivered from the federal penitentiary to the City of St. Louis Justice Center on July 23, 2004. Neither the circuit attorney's office nor Defendant's counsel was informed of Defendant's presence.

After arriving in St. Louis, Defendant contacted his sister in an effort to have his $10,000 bond posted. Ernest Troupe ("Troupe"), Defendant's sister's husband and a professional bondsman, posted a $10,000 professional bond on July 25, 2004. Neither the State nor Defendant's attorney had notice of the posting of the bond. Troupe signed the bond as a surety and Defendant signed the bond as principal, thereby canceling the capias warrant. The Pre–Trial Release Commissioner approved the transaction on July 26, 2004. Vinson was not released, but remained in custody in the City of St. Louis Justice Center for approximately five days. During that time, Vinson did not contact his attorney, nor was he brought before the court for further proceedings. Thereafter, Vinson was returned to the federal penitentiary in Marion, Illinois by members of the Metropolitan St. Louis Police Department without the knowledge of the circuit attorney's office.[2]

On December 9, 2004, the State filed a pretrial memorandum, in Division 16, Judge Donald McCullin presiding, apprising the trial court of possible issues related to the anti-shuttling provision of the IAD.[3] Thereafter, Defendant filed a motion to dismiss the indictment arguing the anti-shuttling provision of the IAD mandated dismissal of the State charges in St. Louis because he was returned to the federal penitentiary prior to disposition of those charges. Judge McCullin heard argu-

---

1. All further statutory references are to RSMo 2000 unless otherwise indicated.

2. The record is unclear as to the procedures and decisions leading up to Defendant's return to federal custody.

3. Defendant was released from federal custody on November 5, 2004.

ments on the motion and denied Defendant's motion to dismiss finding Defendant waived any protections under the IAD by posting bond.[4] The case was again transferred to Division 12, Judge Schaumann presiding, for a trial. On February 7, 2005, the day of the trial, Defendant requested the trial court to reconsider his motion to dismiss based on IAD violations. Over the State's objection, Judge Schaumann granted Defendant's request and held a hearing on the motion. Subsequently, Judge Schaumann granted Defendant's motion to dismiss finding Defendant had not waived his IAD rights under the anti-shuttling provision. Judge Schaumann found that the provisions of the anti-shuttling provision are clear and unambiguous. Judge Schaumann also found that pursuant to the temporary custody agreement, Defendant did not have the right to be admitted to bail or placed on bond and that the only effect of the bond was to cancel the previously issued capias warrant. The State now appeals.

█ In its sole point on appeal, the State contends the trial court erred in granting Defendant's motion to dismiss. The State argues Defendant waived his protections under the anti-shuttling provision because Defendant caused his own return to the federal penitentiary by voluntarily posting a bond.

Our review is de novo because the State's point raises a question of law as to whether the trial court properly applied the law in dismissing Vinson's indictment. *State v. Lybarger*, 165 S.W.3d 180, 184 (Mo.App. W.D.2005). However, to the extent the application of the law is based on the evidence presented, we view the facts in the light most favorable to the judgment, giving deference to the trial court's factual findings and credibility determinations. *Id.*

█ The IAD is an interstate compact subject to federal construction. *Ellsworth v. State*, 964 S.W.2d 455, 456 (Mo.App. E.D.1998). The IAD applies to prisoners incarcerated in another jurisdiction who have untried Missouri charges and are subject to detainers originating in Missouri. *State v. Branstetter*, 107 S.W.3d 465, 472 (Mo.App. W.D.2003). The purpose of the IAD, as set forth in Article I, is to encourage the expeditious and orderly disposition of charges outstanding against a prisoner and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints. Section 217.490. The IAD contains an "anti-shuttling" provision found in Paragraph 5 of Article IV, which provides:

> If trial is not had on any indictment, information or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to paragraph 5 of article V of this agreement, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

Section 217.490.

█ The rights and protections created by the IAD are statutory rights, not fundamental or constitutional in nature. *Kenneth–Smith v. State*, 838 S.W.2d 113, 117 (Mo.App. E.D.1992); *United States v.*

---

4. In his judgment, Judge McCullin specifically stated:

> In the instant case, defendant made bond. When defendant made bond he was still subject to a detainer in the federal prison. A natural consequence of his making bond

was that he would be returned to federal prison. This was a voluntary act on defendant's part having the consequence of sending him back to federal prison. As a result, defendant waived his right to the protection of the anti[-]shuttling provision of the IAD.

*Black,* 609 F.2d 1330, 1334 (9th Cir.1979)(holding that the "protections of the IAD are not founded on constitutional rights, or the preservation of a fair trial, but are designed to facilitate a defendant's rehabilitation in prison and to avoid disruptions caused when charges are outstanding against the prisoner in another jurisdiction.") As such, a defendant's protections under the IAD can be waived. *New York v. Hill,* 528 U.S. 110, 114, 120 S.Ct. 659, 145 L.Ed.2d 560 (2000); *Kenneth–Smith,* 838 S.W.2d at 117; *United States v. Scallion,* 548 F.2d 1168, 1174 (5th Cir.1977); *United States v. Ford,* 550 F.2d 732, 742 (2nd Cir.1977). Furthermore, it does not matter that a defendant does not knowingly or intelligently waive his IAD protections. *Black,* 609 F.2d at 1334. Under the IAD, waiver is shown by proof that the prisoner has affirmatively requested to be treated in a manner contrary to the IAD indicating waiver. *Hill,* 528 U.S. at 114, 120 S.Ct. 659. *Kenneth–Smith,* 838 S.W.2d at 117; *United States v. Eaddy,* 595 F.2d 341, 344 (6th Cir.1979).

■ A defendant may personally waive his or her protections under the anti-shuttling provision of the IAD. *Ford,* 550 F.2d at 742. In *Ford,* the defendant was in federal custody when he asked to be returned to Massachusetts custody "so that he and his attorney could more conveniently prepare for trial and because his family was in Massachusetts." *Id.* at 735. The defendant was returned to Massachusetts upon his request. *Id.* In rejecting the defendant's argument that this violated the IAD anti-shuttling provision, the court held:

> The [anti-shuttling] provision, however, which is intended to avoid the disruptions in a prisoner's rehabilitation occasioned by repeated transfers between jurisdictions, is thus for [the defendant's] benefit and is waivable. Here,

[the defendant] himself requested the transfer and by doing so waived his objection to it under [the anti-shuttling provision].

*Id.* at 742.

Further, a defendant may waive his or her protections under the IAD's anti-shuttling provision even where they do not do so knowingly or intelligently. *Black,* 609 F.2d at 1334. In *Black,* the defendant was returned to state custody on three occasions before being sentenced on his federal charges, and argued that the federal government therefore violated the anti-shuttling provision of the IAD. *Id.* The court rejected the defendant's argument finding that on each occasion the defendant requested his return. *Id.* The court held that "a defendant waives the protections of the IAD's anti-shuttling provision when he requests the transfer before final disposition of the outstanding charges." *Id.* The defendant then argued that even though he requested the transfers, he did not knowingly and intentionally relinquish his protections under the IAD. *Id.* The court rejected this argument finding that a knowing and intelligent waiver was not necessary because that requirement applies "only to those rights which the Constitution guarantees to a criminal defendant in order to preserve a fair trial." *Id.* (*quoting Schneckloth v. Bustamonte,* 412 U.S. 218, 237, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)). The court concluded that the defendant, when he requested the return to state custody, waived his right and could not later contend that he did not do it knowingly and intelligently. *Black,* 609 F.2d at 1334.

Similarly, in *Scallion,* the defendant was transported from New York state custody to federal custody pursuant to a detainer request. *Scallion,* 548 F.2d at 1169–1170. The defendant was arraigned and transported back to New York state custody

pursuant to a request from the defendant's attorney that he be temporarily returned to New York for a parole hearing. *Id.* In addressing the defendant's argument that his return to New York state custody violated the anti-shuttling provision of the IAD, the court held that the defendant's return to New York state custody was at the defendant's request and that the defendant was therefore estopped from arguing a violation of the IAD's anti-shuttling provision. *Id.* at 1170.

As in *Ford, Black,* and *Scallion,* Defendant's return to federal custody was the result of his voluntary, affirmative actions. Here, Defendant's voluntary, affirmative act of posting bond resulted in his being transported back to federal custody. Although Defendant did not specifically request to be returned to federal custody, his act of posting bond resulted in his return to the federal penitentiary. We find this act constituted an affirmative request for treatment in a manner contrary to the IAD. Pursuant to the IAD agreement, Defendant agreed that the agreement:

> shall constitute a consent by me to the production of my body in any court where my presence may be required in order to effectuate the purposes of the Interstate Agreement on Detainers Act and a further consent voluntarily to be returned to the institution in which I am now confined.

Thus, Defendant agreed to remain in custody and by posting bond in an attempt to be released or cause his return to federal custody, Defendant acted in a manner contrary to the IAD.

Furthermore, at the hearing on his motion to dismiss, Defendant testified that he wanted to go back to federal custody to finish his federal sentence and he stated that he knew he would have to return to the federal penitentiary and "could not leave custody." By posting bond which

caused his return to federal custody, and thereby requesting treatment contrary to the IAD, Defendant waived his protection under the anti-shuttling provision of the IAD. Whether Defendant was aware that he was waiving his IAD protections does not matter because there is no requirement that waiver of IAD protections must be made knowingly or intelligently.

In support of his motion to dismiss, Defendant relied on *Alabama v. Bozeman,* 533 U.S. 146, 121 S.Ct. 2079, 150 L.Ed.2d 188 (2001), to support his contention that the language of the anti-shuttling provision is "plain, concise, and mandatory," and thus, the indictment must be dismissed. In *Bozeman,* the defendant made a request for disposition of detainers pursuant to the IAD. *Id.* at 151, 121 S.Ct. 2079. The state then brought the defendant from federal custody to state custody for one day for an arraignment and then returned him to federal custody. *Id.* The defendant filed a motion to dismiss alleging that his being transported to state custody for one day and then being returned to federal custody was a violation of the anti-shuttling provision of the IAD. *Id.* The trial court denied his motion and the defendant was subsequently convicted. *Id.* at 152, 121 S.Ct. 2079. The Alabama Supreme Court reversed the defendant's conviction finding that the state violated the IAD when it returned the defendant to federal custody. *Id.* The United States Supreme Court affirmed the Alabama Supreme Court's decision, rejecting the state's argument that the shuttling of the defendant for one day for arraignment was a "technical, harmless, or *de minimus* " violation of the IAD's anti-shuttling provision. *Id.* at 153, 121 S.Ct. 2079. The Court held that the language of the IAD "militates against an implicit exception, for it is absolute." *Id.*

The Court in *Bozeman,* however, noted that the state did not claim that the defen-

dant waived his IAD rights and stated "[n]or does [the state] claim that [the defendant] waived the right to trial before return that Article IV provides." *Id.* at 152, 121 S.Ct. 2079. The Court further clarified at the end of its opinion that:

[a]lthough we reject [the state's] interpretation of the [IAD], our decision does not bar a receiving State from returning a prisoner when it would be mutually advantageous and the prisoner accordingly waives his rights under the [anti-shuttling provision].

*Id.* at 156–57, 121 S.Ct. 2079 (*citing Hill,* 528 U.S. at 114–15, 120 S.Ct. 659).

We find the *Bozeman* case factually distinguishable from the present case. In *Bozeman,* the state intentionally transported the defendant from federal custody to state custody for one day and then returned him to federal custody. The defendant in *Bozeman* took no action with regard to the shuttling and therefore, the state could not argue waiver, but instead argued that the violation was trivial. Here, unlike *Bozeman,* it was Defendant's own voluntary action, and not the State's action, that led to Defendant's return to federal custody.

We find by his voluntary and affirmative action of posting bond which caused his return to federal custody, Defendant waived his protections under the IAD's anti-shuttling provision. Thus, the trial court erred in dismissing the indictment. The trial court's dismissal of the indictment is reversed and the cause is remanded for further proceedings consistent with this opinion.

NANNETTE A. BAKER, P.J. and SHERRI B. SULLIVAN, J., concur.