[Cite as *State v. Johnson*, 2016-Ohio-7036.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | | |
| Plaintiff-Appellee, | : | Case No. 16CA3733 | |
| v. | : | DECISION AND JUDGMENT ENTRY | |
| TRACY L. JOHNSON, | : | | |
| Defendant-Appellant. | : | RELEASED: 09/28/2016 | |

APPEARANCES:

W. Jeffrey Moore, Columbus, Ohio for appellant.

Mark E. Kuhn, Scioto County Prosecuting Attorney and Julie Cooke Hutchinson, Assistant Scioto County Prosecuting Attorney, Portsmouth, Ohio for appellee.

Hoover, J.

{¶ 1} Defendant-appellant Tracy L. Johnson ("Johnson") appeals a judgment from the Scioto County Common Pleas Court denying his motion to dismiss the charges against him. The plaintiff-appellee State of Ohio ("State") extradited Johnson from Pennsylvania to Ohio to answer charges that had been pending since 2008. In the course of Johnson's case, Johnson filed a motion to dismiss arguing that the State and the trial court violated sections of the Interstate Agreement on Detainers ("IAD"), as codified in Ohio in R.C. 2963.30. After the trial court denied Johnson's motion, he entered a plea of no contest to charges of trafficking in drugs and tampering with evidence. The trial court found Johnson guilty of the two charges, convicted him, and sentenced him to prison terms of two years on each count to run concurrent to one another.

{¶ 2} On appeal, Johnson raises three assignments of error challenging the trial court's denial of his motion to dismiss the criminal charges. First, Johnson alleges that the State violated Article III(c) of the IAD because he was never given notice of the detainer lodged against him by the State. However, we find that the IAD does not provide for dismissal of charges in a receiving state for solely a violation of Article III(c). Therefore, we cannot reverse the trial court's judgment and order a dismissal of the charges for the violation Johnson asserts.

{¶ 3} In his second assignment of error, Johnson alleges that the State violated Article IV(e) of the IAD by allowing him to return to Pennsylvania before the disposition of the Ohio charges against him. Article IV(e), known as the "anti-shuttling" provision of the IAD, provides that if a trial is not held in the receiving state prior to the return of the prisoner to the original place of imprisonment, the charges are to be dismissed with prejudice. After Johnson arrived in Ohio following extradition, he posted bond out of Ohio's custody and returned to a residential treatment facility in Pennsylvania. We hold that Johnson's affirmative action of posting bond and returning to Pennsylvania waived his protections under Article IV(e) of the IAD.

{¶ 4} Finally, in his third assignment of error, Johnson claims that the trial court erred by not bringing him to trial within 120 days of his arrival in Ohio, as required by Article IV of the IAD. We disagree. First, Johnson's counsel agreed to continue the case until September 21, 2011, a date beyond the IAD, Article IV(c)'s 120-day statutory period. Second, Johnson filed three motions to suppress in April 2011, before he arrived in Ohio. Johnson eventually withdrew those motions to suppress in September 2011. We find the IAD's 120-day time period was tolled from the time Johnson filed his motions to suppress until the time he withdrew those motions. Because the trial was scheduled in November 2011, the 120-day limitation had not elapsed before Johnson filed his motion to dismiss.

{¶ 5} Consequently, for those reasons and the reasons more fully discussed below, we overrule Johnson's assignments of error; and we affirm the judgment of the Scioto County Common Pleas Court denying Johnson's motion to dismiss.

## I. Facts and Procedural Posture

{¶ 6} In June 2008, the Scioto County Grand Jury returned an indictment charging Johnson with four counts: (1) trafficking in marijuana, a felony of the third degree; (2) possession of marijuana, a felony of the third degree; (3) conspiracy to trafficking in marijuana, a felony of the fourth degree; and (4) tampering with evidence, a felony of the third degree. Johnson retained counsel and entered a plea of not guilty to the charges. In November 2008, Johnson filed three motions to suppress evidence. The trial court scheduled hearings on the motions for January 2009. When Johnson failed to appear, the trial court issued a bench warrant for Johnson's arrest.

{¶ 7} In February 2011, the State learned that Johnson was incarcerated in Pennsylvania and proceeded to request temporary custody of Johnson under Article IV(a) of the IAD. The State ultimately decided, however, to wait until Johnson was released on parole from the Pennsylvania prison to proceed on the bench warrant and seek his extradition. In April 2011, Johnson was released on parole from the Pennsylvania prison and was arrested pursuant to the bench warrant issued by the trial court in 2009. On April 29, 2011, Johnson waived extradition to Ohio to answer the pending charges; thus, a Pennsylvania court ordered the extradition. Earlier that month, Johnson's counsel refiled his three motions to suppress. Johnson was returned to Ohio around May 9, 2011; and he was released on bond on June 3, 2011. At that time, Johnson returned to Pennsylvania to serve a portion of his parole in a community education center providing reentry services to parolees.

{¶ 8} In September 2011, Johnson withdrew his motions to suppress. Two months later, Johnson filed a motion to dismiss based on the claim that the State had violated various provisions of the IAD. The State filed a response; and Johnson filed a reply. The parties attached exhibits to their filings regarding the motion to dismiss. Afterwards, Johnson appealed the trial court's denial of the motion to dismiss; however, in July 2012 this Court dismissed Johnson's appeal because the trial court's entry denying his motion to dismiss was not a final, appealable order. *See State v. Johnson*, 4th Dist. Scioto No. 12CA3478.

{¶ 9} After this court dismissed Johnson's appeal, the case then proceeded in the trial court. The case was scheduled for a jury trial in October 2012. On October 11, 2012, Johnson waived his right to a jury trial. In December 2012, Johnson signed a waiver form stating that, "I withdraw my former plea of not guilty, and enter a plea of guilty to the crime of [trafficking in drugs and tampering with evidence]* * *." However, at a plea hearing, Johnson orally entered a plea of no contest to the charges. The trial court's December 6, 2012 judgment entry indicates that Johnson entered a no contest plea to the charges. Subsequent judgment entries and the parties herein state that Johnson entered a no contest plea.

{¶ 10} For reasons unknown and not disclosed in the record, more than one and a half years passed before Johnson was actually sentenced. In September 2014, the trial court found Johnson guilty of the trafficking in drugs and tampering with evidence charges; and the trial court sentenced Johnson to an aggregate two-year prison term. However, the trial court's judgment entry contained no disposition of Johnson's other charges—possession of marijuana and conspiracy to trafficking in marijuana—and no other journal entry in the record indicated any resolution of these charges.

{¶ 11} Johnson appealed his convictions in *State v. Johnson*, 4th Dist. No. 14CA3660, 2015-Ohio-3370. However, because the trial court failed to dispose of the possession of marijuana charges and since no journal entry appeared in the record resolving all of the charges against Johnson, no final appealable order existed. *Id*. at ¶ 2. Consequently, this Court lacked jurisdiction to address the merits of Johnson's appeal; and we dismissed it. *Id*.

{¶ 12} On remand, on January 20, 2016, the trial court filed a notice of dismissal of the counts of possession of marijuana and conspiracy to trafficking in marijuana. Thereafter, the parties reasserted this appeal.

## II. Assignments of Error

{¶ 13} Johnson sets forth three assignments of error.

Assignment of Error No. 1:

> The trial court erred in failing to find the State of Ohio violated Article III section
>
> (C) of the Interstate Agreement on Detainers.

Assignment of Error No. 2:

> The trial court erred in failing to find the State of Ohio violated Article IV section
>
> (E) of the Interstate Agreement on Detainers in that it allowed the Appellant to
>
> return to the sending state before trial was held in Ohio.

Assignment of Error No. 3:

> The trial court erred by failing to bring Mr. Johnson to trial within 120 days of his
>
> presence in Ohio in violation of Article IV of the Interstate Agreement on
>
> Detainers.

## III. Law and Analysis

### A. The Interstate Agreement on Detainers

{¶ 14} "The Interstate Agreement on Detainers ("IAD") is a compact among 48 states, the District of Columbia, and the United States that establishes procedures for one jurisdiction to obtain temporary custody of a prisoner incarcerated in another jurisdiction for the purpose of bringing the prisoner to trial." *State v. Black*, 142 Ohio St.3d 332, 2015-Ohio-513, 30 N.E.3d 918, ¶ 3, citing *Cuyler v. Adams*, 449 U.S. 433, 435, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981), fn 1. "Ohio adopted the IAD in 1969 and codified its provisions in R.C. 2963.30. Am.S.B. No. 356 ("S.B. 356"), 133 Ohio Laws, Part I, 1067." *Black* at ¶ 3. "As 'a congressionally sanctioned interstate compact' within the Compact Clause of the United States Constitution, Art. I, § 10, cl. 3, the IAD is a federal law subject to federal construction." *State v. Golden*, 177 Ohio App.3d 771, 2008-Ohio-3227, 896 N.E.2d 170, ¶ 9, quoting *New York v. Hill*, 528 U.S. 110, 111, 120 S.Ct. 659, 145 L.Ed.2d 560 (2000). (Other citations omitted).

{¶ 15} "The IAD arose from a report issued in 1948 that addressed difficulties that prisoners and state authorities faced regarding the use of detainers." *Black* at ¶ 4, citing *United States v. Mauro*, 436 U.S. 340, 349–350, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978); *see also Meadows*, Interstate Agreement on Detainers and the Rights it Created, 18 Akron L.Rev. 691 (1985). "The Council for State Governments drafted the legislation in 1956 and included the draft with its Suggested State Legislation Programs for 1957." *Black*, citing *Mauro* at 349-350; *Carchman v. Nash*, 473 U.S. 716, 719, 105 S.Ct. 3401, 87 L.Ed.2d 516 (1985). "In 1970, Congress enacted the IAD into law on behalf of the United States and the District of Columbia." *Black* at ¶ 4, citing *Mauro* at 353, 98 S.Ct. 1834. "For the states, the IAD is a congressionally sanctioned interstate compact under the Compact Clause, Article I, Section 10, of the United States Constitution." *Black* at ¶ 4, citing *Carchman* at 719.

{¶ 16} " 'The IAD outlines two procedures by which a prisoner against whom a detainer has been lodged may be transferred to the temporary custody of another state for disposition of charges pending there. 'One of these procedures may be invoked by the prisoner; the other by the prosecuting attorney of the receiving State.' " *Black* at ¶ 8, quoting *Cuyler* at 444. Article III contains the prisoner-initiated procedure:

> Under the prisoner-initiated procedure outlined in the statute, the "warden, commissioner of corrections or other officials having custody of the prisoner" must promptly inform the prisoner of any detainer as well as the prisoner's rights in making a request for final disposition. R.C. 2963.30, Article III(c). The prisoner may then provide a written notice for final disposition to the warden, commissioner of corrections, or other official having custody of him, who must forward it to the "appropriate prosecuting official and court" in the receiving state, that is, the state where the detainer is pending. *Id*., Article II(c) and III(b). The receiving state must bring the prisoner to trial within 180 days of receiving the prisoner's request for disposition, or the charges will be dismissed with prejudice for good cause shown. *Id.,* Article III(a) and (d). A prisoner invoking the IAD also waives any objection to extradition. *Id*., Article III(e). Because a prisoner's request under the statute operates as a request for final disposition of any untried indictments on which a detainer from the receiving state is based, the authorities with custody of the prisoner must notify all the prosecuting officers and courts in the receiving state of any request for final disposition by the prisoner. *Id*., Article III(d).

*Black* at ¶ 9.

{¶ 17} Article IV provides for the prosecutor-initiated procedure:

Under the prosecutor-initiated procedure outlined in the statute, the receiving state

has 120 days after the prisoner's arrival in the state to bring the prisoner to trial.

[R.C. 2963.30], Article IV(c). To initiate the procedure, the prosecuting official in

the receiving state must make a written request for temporary custody to the

"appropriate authorities of the state in which the prisoner is incarcerated," *id*.,

Article IV(a), also known as the "sending state," *id*., Article II(b). The governor

of the sending state may disapprove the request sua sponte or upon the motion of

the prisoner. *Id*., Article IV(a). After the sending state receives a request, the

authorities with custody over the prisoner must provide the receiving state with a

certificate providing certain details regarding the prisoner's incarceration,

including the time remaining to be served and any time for parole eligibility. *Id*.,

Article IV(b). They must also provide notice of the request for custody to all other

prosecuting authorities and courts from the receiving state who have lodged

detainers against the prisoner. *Id*., Article IV(b).

*Black* at ¶ 10.

{¶ 18} "Under either procedure, if a trial is not held in the receiving state 'prior to the

return of the prisoner to the original place of imprisonment,' the charges are to be dismissed with

prejudice." *Id* at ¶ 11, quoting R.C. 2963.30, Article III(d) and IV(e).  "This provision is referred

to as the 'antishuttling provision' of the IAD." *Black* at ¶ 10, quoting *United States v. Taylor*,

173 F.3d 538, 540 (6th Cir.1999).

**B. Standard of Review**

{¶ 19} "Appellate review of a trial court's decision regarding a motion to dismiss involves a mixed question of law and fact." *State v. Clemons*, 2013-Ohio-3415, 996 N.E.2d 507, ¶ 6 (4th Dist.), citing *State v. Staffin*, 4th Dist. No. 07CA2967, 2008-Ohio-338, 2008 WL 274791, ¶ 6 (reviewing a dismissal on speedy-trial grounds), citing *State v. Pinson*, 4th Dist. No. 00CA2713, 2001 WL 301418 (Mar. 16, 2001). "We accord due deference to the trial court's findings of fact if supported by competent, credible evidence; however, we independently review whether the trial court properly applied the law to the facts of the case." *Id.* (Other citations omitted). Furthermore, we review a decision interpreting the IAD under a de novo standard of review. *State v. Jeffers*, 4th Dist. Gallia No. 96CA13, 1997 WL 346158 (Jun. 20, 1997). Therefore, we will defer to the trial court's findings of fact if supported by competent, credible evidence; but we will apply a de novo standard of review to determine whether the trial court properly applied the law to the facts of the case.

### C. Assignment of Error No. 1- The IAD Does Not Provide for Dismissal of Charges for a Violation of Article III(c).

{¶ 20} In his first assignment of error, Johnson argues that the State violated Article III(c) of the IAD by failing to notify him of the detainer it lodged against him while he was incarcerated in the Pennsylvania correctional institution. Johnson asserts that the State bears the burden of proving that a warden of the penal institution gave an inmate notice of a pending indictment or detainer against him from another state. Johnson contends that there is no evidence in the record that officials of the Pennsylvania correctional institution notified him about the Ohio detainer before April 2011.

{¶ 21} The State asserts that Johnson was not returned to Ohio by means of the IAD, but by a bench warrant issued in 2009, followed by extradition in April 2011. It is the State's overall

position that the provisions of the IAD should not apply to this case. Alternatively, however, the State argues that if the IAD is applicable to this case, then the exhibits attached to the pretrial motions provide evidence that Johnson was notified about the State's request for temporary custody.

{¶ 22} First, we will address whether Article III(c) of the IAD was applicable in this case. Article III(c) of the IAD states: "The warden, commissioner of corrections or other official having custody of the prisoner shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his rights to make a request for final disposition of the indictment, information or complaint on which the detainer is based."

{¶ 23} Recently, the Ohio Supreme Court addressed the purpose of the IAD:

The drafters of the IAD recognized that detainers, which could be issued informally but never acted on by prosecutors, had certain detrimental effects on prisoners because they posed a threat of further prosecution and could lead to additional sanctions, higher security classification, loss of privileges, or ineligibility for rehabilitative programs and parole. *See* Meadows, 18 Akron L.Rev. at 691-692. Thus, the legislation recognized that "charges outstanding against a prisoner, detainers based on untried indictments, information or complaints, and difficulties in securing speedy trials of persons already incarcerated in other jurisdictions" cause uncertainties that "obstruct programs of prisoner treatment and rehabilitation." R.C. 2963.30, Article I.

To address these uncertainties, the purpose of the IAD is twofold. Meadows, 18 Akron L.Rev. at 695. First, the IAD expressly states that its purpose is "to encourage the expeditious and orderly disposition of such charges and

determination of the proper status of any and all detainers based on untried

indictments, informations or complaints." R.C. 2963.30, Article I. Second, the

IAD is intended to provide cooperative procedures to facilitate interstate transfers.

*Id*. Taken together, the objective of the IAD is "to implement a defendant's right

to a speedy trial and to avoid excessive interference with a prisoner's

rehabilitation in the state prison system." *United States v. Palmer*, 574 F.2d 164,

167 (3d Cir.1978).

*Black*, 142 Ohio St.3d 332, 2015-Ohio-513, 30 N.E.3d 918, at ¶¶ 6-7.

{¶ 24} The provisions of the IAD are triggered when a prosecutor files a detainer with

the institution currently holding the prisoner. *State v. Anderson*, 189 Ohio App.3d 697, 2010-

Ohio-5068, 939 N.E.2d 1317, ¶ 11, citing *Mauro*, 436 U.S. at 343, 98 S.Ct. 1834, 56 L.Ed.2d

329. "A 'detainer' is 'a request filed by a criminal-justice agency with the institution in which a

prisoner is incarcerated, asking the institution either to hold the prisoner for the agency or to

notify the agency when release of the prisoner is imminent.' " *Id*., quoting *State v. Sanchez*, 110

Ohio St.3d 274, 2006-Ohio-4478, 853 N.E.2d 283, ¶ 19, quoting *Carchman*, 473 U.S. at 719,

105 S.Ct. 3401, 87 L.Ed.2d 516.

{¶ 25} In the case sub judice, on February 23, 2011, the Scioto County Prosecutor sent a

"Request for Temporary Custody" to the warden of the Pennsylvania correction institution where

Johnson was incarcerated. The request stated "I propose to bring this person to trial on this

Indictment within the time specified in Article IV(c) of the Agreement. In order that proceeding

in this matter may be properly had, I hereby request temporary custody of such persons pursuant

to Article IV(a) of the Agreement on Detainers." We find that the State's request for temporary

custody, without question, triggered the application of the IAD. Accordingly, compliance with the notification requirements was required.

{¶ 26} Next, since we have determined that the IAD clearly applies to this case, we will examine Johnson's claim that the State failed to notify him of its request for temporary custody. In reviewing the record, the only IAD form that we find is the prosecutor's "Request for Temporary Custody," Agreement of Detainers: Form V.

{¶ 27} In support of his argument, Johnson cites *State v. Stowe*, 5th Dist. Delaware No. 09CAA050046, 2010-Ohio-4646 and *State v. Dillon*, 114 Ohio St.3d 154, 2007-Ohio-3617, 870 N.E.2d 1149. In *Stowe*, the Delaware County Prosecuting Attorney, in May 2006, faxed a document to the Florida Department of Corrections indicating that it had an active warrant for defendant and requesting that it be contacted when defendant was to be released. *Id.* at ¶ 4. In December 2006, defendant sent a letter to the Delaware County Prosecutor's office indicating that he was in federal custody in Jacksonville, Florida awaiting sentencing on various crimes. *Id.* at 5. Later, defendant's Florida counsel sent another letter to the Delaware County Prosecutor's office that sought information as to whether or not charges were pending against the defendant and if so to resolve any pending charges. *Id.* In January 2007, the prosecutor's office responded to defendant's counsel stating that it intended to prosecute defendant for the criminal charges pending in Delaware County. *Id.*

{¶ 28} In September 2008, the Federal Bureau of Prisons requested that the Delaware Sheriff's office advise it if the office wanted a detainer placed on defendant and if so, to forward a certified copy of the warrant. *Id.* at ¶ 7. Defendant was returned to Ohio on March 12, 2009. *Id.* at ¶ 8. On March 27, 2009, defendant field a motion to dismiss arguing that he had been denied due process of law and a speedy trial. *Id.* at ¶ 9. The trial court ordered the charges against

defendant dismissed in accordance with *Dillon*, 114 Ohio St.3d 154, 2007-Ohio-3617, 870

N.E.2d 1149. In *Dillon*, the Ohio Supreme Court held: "An inmate's awareness of a pending

indictment and of his right to request trial on the pending charges does not satisfy the notification

requirements of R.C. 2941.401, which requires a warden or prison superintendent to notify a

prisoner 'in writing of the source and contents of any untried indictment' and of his right 'to

make a request for final disposition thereof.' " *Id.* at syllabus.

{¶ 29} In *Stowe*, the trial court determined that the 180 days in which to bring defendant

to trial commenced when defendant entered the federal prison system in December of 2007 after

he was sentenced. This is because the IAD applies only to prisoners who have begun serving

their sentence of imprisonment and not to detainees who are awaiting the disposition of their

proceedings. *Black*, 142 Ohio St.3d 332, 2015-Ohio-513, 30 N.E.3d 918. The Fifth District Court

of Appeals affirmed the trial court's judgment. *Id*. at ¶ 24. The court stated:

> The United States Supreme Court has held that the one hundred eighty day time
>
> period in Article III(a) of the IAD does not begin until a prisoner's request for
>
> disposition is actually delivered to the court and the prosecuting officer that
>
> lodged the detainer against him. *See Fex v. Michigan* (1993), 507 U.S. 43, 52, 113
>
> S.Ct. 1085, 1091, 122 L.Ed.2d 406. We concur with the trial court that the State
>
> has the burden of ensuring that institutions comply with R.C. 2963.30 and
>
> ensuring that defendants are tried within the time constraints imposed by law. The
>
> State cannot simply allow a defendant to remain in prison in another jurisdiction
>
> for months or years on end when there are pending charges against the defendant
>
> and the State knows, or should know, where the defendant is located. To allow
>
> this would circumvent the purpose of R.C. 2963.30 which is the orderly and

expeditions disposition or charges outstanding against a prisoner. R.C. 2963.30 (Art.I).

The trial court found, and we concur, that there is no evidence that appellee was ever given written notice by the Florida warden of the Delaware County indictment against him as required by Article III or that appellee was informed of his right to request disposition of the Delaware County charges. While, as noted by the trial court, it is apparent that appellee knew about the Delaware County indictment against him as early as January of 2006, a defendant's knowledge of a pending indictment (or detainer) and of his right to request trial on the same does not satisfy the notification requirements. *See State v. Dillon*, 114 Ohio St.3d 154, 2007-Ohio-3617, 870 N.E.2d 1149.

*Id.* at ¶¶ 16-17. The court in *Stowe* acknowledged that *Dillon* dealt with the notification requirements of R.C. 2941.404, not the IAD statute R.C. 2963.03. *Id*. at ¶ 17, fn. 2.

{¶ 30} The court further stated:

As is stated above, appellee was never given written notice by the Florida Warden of the Delaware County indictment against him or of his right to make a request for final disposition of the same. Absent notification to a prisoner of the prisoner's right to make a request for disposition, the State cannot rely upon the prisoner's failure to make demand for speedy disposition but must count the time as having commenced upon the first triggering of the State's duty to give notice of the right to make demand for speedy disposition. *See State v. Fitch* (1987), 37 Ohio App.3d 159, 524 N.E.2d 912.

*Id.* at ¶ 21.

{¶ 31} In the case sub judice, the appellate briefs of the parties indicate that in January 2011, Johnson's counsel contacted the Scioto County Prosecutor's office. Johnson's brief indicates that his counsel was calling to inform the prosecutor that Johnson was in a penitentiary in Pennsylvania, while the State's brief asserts that Johnson's counsel requested a computerized history from the Scioto County Sheriff's office in order to ascertain Johnson's whereabouts. Nonetheless, it is clear that in February 2011, the State filed a request for temporary custody with the Pennsylvania penitentiary, utilizing Article IV of the IAD.

{¶ 32} The State admits in its appellate brief that the IAD process was never completed. Instead, the exhibits attached to the relevant pretrial motions indicate that after discovering that Johnson was set to be paroled in April 2011, the State decided to wait until that time to extradite Johnson. Contrary to the State's assertions, there is no definitive proof in the record that Johnson received notice of the State's February 2011 detainer. However, it is clear that Johnson's counsel and the State were in communication regarding the pending Ohio charges and Johnson's location.

{¶ 33} We find this case to be distinguishable from the *Stowe* and *Dillon* cases. Here, Johnson never asserted a violation of Article III(a) either in his motion to dismiss before the trial court or here on appeal. Johnson never alleged that the State failed to bring him to trial within the 180-day time period required by Article III(a) of the IAD. Johnson also never attempted to assert his right to request final disposition within 180 days pursuant to Article III(a) of the IAD. Instead, Johnson's argument that he first alleged in his memorandum contra to the State's response to his original motion to dismiss and asserts here on appeal is that the State violated Article III(c) of the IAD. Johnson specifically argues that his rights under Article III(c) were violated in that he was not informed by the warden of the institution of the detainer lodged

against him and his right to request a final disposition (the 180-day process initiated under Article III) of the charges against him.

{¶ 34} Therefore, we find that Johnson's claims differ from those asserted by the defendant in *Stowe*, and addressed by the Fifth District Court of Appeals in that case. Accordingly, because Johnson did not assert a violation of Article III(a) and instead claimed a violation of Article III(c), we are left to address the issue of whether, even if there was a violation of Article III(c), whether a remedy exists for a violation of Article III(c).

{¶ 35} The IAD expressly requires dismissal of a criminal charge in three circumstances: (1) if a prisoner, having been transferred to the receiving State, is returned to the sending state prior to the completion of trial, R.C. 2963.30 Art. IV(e); (2) if the receiving state fails to accept temporary custody of the prisoner after filing a detainer, *id* Art. V(c); (3) If a prisoner is not brought to trial within the time periods proscribed by Articles III and IV, which respectively require trial within 180 days of a state receiving a prisoner's IAD request or within 120 days of a prisoner being transferred to a receiving state, when an officer of the receiving state requested that transfer. *Id.* Art. III(a), IV(c) and V(c); *United States v. Robinson*, 290 F.Supp.2d 808, 814 (E.D.Mich. 2003). "The IAD does not state what remedy, if any, is available if the prisoner is not informed of his right to demand a trial." *Robinson* at 814.

{¶ 36} Our research reveals that multiple United States Circuit Courts of Appeals have held that dismissal of the indictment is not an available remedy for a violation of the notice provision of the IAD. *See United States v. Robinson*, 455 F.3d 602, 606 (6th Cir.2006); *United States v. Walker*, 255 F.3d 540, 542-543 (8th Cir.2001); *United States v. Lualemaga*, 280 F.3d 1260, 1263-1265 (9th Cir. 2002); *United States v. Pena-Corea*, 165 F.3d 819, 821-822 (11th Cir.1999); *Lara v. Johnson*, 141 F.3d 239, 243, f.n. 4 (5th Cir.1998).

{¶ 37} Other state courts of appeals have held likewise. *See People v. Patton*, 285 Mich.App. 229, 775 N.W.2d 610 (2009) ("Because the IAD expressly provides for the remedy of dismissal for certain violations but not for a violation of Article III(c), defendant is not entitled to have his conviction vacated and the embezzlement charge dismissed."); *see also Schin v. State*, 744 S.W.2d 370, 374 (Tex.App.1988) ("[T]he receiving state's charges should not be dismissed except as expressly allowed under the IAD. Inasmuch as the legislature chose to specify situations when dismissal is the appropriate remedy, the courts should not expand that relief to cover possible procedural errors made by another state's prison officials. * * *Although we may sympathize with appellant, we find no authority in the statute to warrant dismissal of the Texas offenses.")

{¶ 38} We find the conclusions of the cited courts persuasive. Accordingly, although we also sympathize with appellant, we cannot grant relief in the form of the dismissal of the Ohio charges against Johnson for a violation of the IAD, Article III(c), where the IAD does not expressly provide for that remedy. Here, Johnson never asserted that he attempted to invoke Article III's disposition of the charges in 180 days or that a violation of the 180-day provision occurred. Therefore, even if we were to assume that a violation of Article III(c) occurred, the trial court did not err in denying Johnson's motion to dismiss based on such a violation. Johnson's first assignment of error is overruled.

## D. Assignment of Error No. 2- Johnson Waived His Protections Under The IAD's Anti-Shuttling Provision

{¶ 39} In his second assignment of error, Johnson argues that the State violated Article IV(e) of the IAD because it allowed him to be returned to Pennsylvania before resolution of his Ohio charges. The State contends that it did not return Johnson to Pennsylvania. Instead, the

State asserts that he returned to Pennsylvania while out on an Ohio bond as required by his

parole agreement.

{¶ 40} The IAD contains what is known as the "anti-shuttling" provision, which is

designed to protect the prisoner from excessive transfers. *State v. James*, 8th Dist. Cuyahoga No.

102944, 2015-Ohio-5429, ¶ 11, citing *United States v. Pursley*, 474 F.3d 757, 762 (10th

Cir.2007). Article IV(e) states: "If trial is not had on any indictment, information or complaint

contemplated hereby prior to the prisoner's being returned to the original place of imprisonment

pursuant to Article V(e) hereof, such indictment, information or complaint shall not be of any

further force or effect, and the court shall enter an order dismissing the same with prejudice."

R.C. 2963.30. Also relevant, Article V(e) states: "At the earliest practicable time consonant with

the purposes of this agreement, the prisoner shall be returned to the sending state." *Id*.

{¶ 41} In support of Johnson's argument, he cites *Alabama v. Bozeman*, 533 U.S. 146,

121 S.Ct. 2079, 150 L.Ed.2d 188 (2001). The facts in *Bozeman* are as follows:

> In January 1997, respondent Michael Bozeman was serving a sentence of
>
> imprisonment for a federal drug crime in federal prison in Marianna, Florida. At
>
> the beginning of that month, the district attorney of Covington County, Alabama,
>
> who had earlier lodged a detainer against Bozeman in connection with charges
>
> related to discharging firearms, sought temporary custody in order to arraign
>
> Bozeman on those firearms charges and secure the appointment of counsel. On
>
> January 23, federal authorities released Bozeman to local officials. Those officials
>
> took him to Covington County, about 80 miles from the federal prison, where he
>
> arrived later in the day. Bozeman spent the night in the county jail, appeared in
>
> local court the next morning, obtained local appointed counsel, and was

transported back to federal prison that evening. About one month later, Bozeman

was brought back to Covington County for trial.

*Id.* at 151.

{¶ 42} The United States Supreme Court held, "The literal language of Article IV(e) bars any further criminal proceedings when a defendant is returned to the original place of imprisonment before trial." *Id*. at paragraph two of the syllabus. The Court held that the IAD makes no distinctions among different kinds of "arrivals," such as those that are followed by return within a short, specified time period, or those that are simply for arraignment purposes. *Id*. at paragraph three of the syllabus. The Court further rejected the idea that the violation was *de mimimis,* technical, or harmless. *Id*. at 154-156. However, the Court also noted that "[a]lthough we reject [the State's] interpretation of the [IAD], our decision does not bar a receiving State from returning a prisoner when it would be mutually advantageous and the prisoner accordingly waives his rights under the [anti-shuttling provision]." *Id*. at 156-157, citing *Hill*, 528 U.S. at 114-15, 120 S.Ct. 659.

{¶ 43} The rights and protections created by the IAD are statutory rights, not fundamental or constitutional in nature. *United States v. Black*, 609 F.2d 1330, 1334 (9th Cir. 1979)(holding that the "protections of the IAD are not founded on constitutional rights, or the preservation of a fair trial, but are designed to facilitate a defendant's rehabilitation in prison and to avoid disruptions caused when charges are outstanding against the prisoner in another jurisdiction.") As such, a defendant may waive his protections under the IAD. *Hill*, 528 U.S. 110, 114, 120 S.Ct. 659, 145 L.Ed.2d 560 (2000); *United States v. Scallion*, 548 F.2d 1168, 1174 (5th Cir. 1977); *United States v. Ford*, 550 F.2d 732, 742 (2nd Cir. 1977). Furthermore, it does not matter that a defendant does not knowingly or intelligently waive his IAD protections. *Black*,

609 F.2d at 1334. Under the IAD, waiver is shown by proof that the prisoner has affirmatively requested to be treated in a manner contrary to the IAD indicating waiver. *Hill*, 528 U.S. at 114, 120 S.Ct. 659; *United States v. Eaddy*, 595 F.2d 341, 344 (6th Cir. 1979).

{¶ 44} In *Ford*, the defendant was in federal custody when he asked to be returned to Massachusetts's custody "so that he and his attorney could more conveniently prepare for trial and because his family was in Massachusetts." *Id*. at 735. The defendant was returned to Massachusetts upon his request. *Id*. In rejecting the defendant's argument that this violated the IAD anti-shuttling provision, the court held: "The [anti-shuttling] provision, however, which is intended to avoid the disruptions in a prisoner's rehabilitation occasioned by repeated transfers between jurisdictions, is thus for [the defendant's] benefit and is waivable. Here, [the defendant] himself requested the transfer and by doing so waived his objection to it under [the anti-shuttling provision]." *Id*. at 742.

{¶ 45} In *Black*, the court held that a defendant may waive his or her protections under the IAD's anti-shuttling provision even where they do not do so knowingly or intelligently. *Id.* at 1334. The court found that a knowing and intelligent waiver was not necessary because that requirement applies "only to those rights which the Constitution guarantees to a criminal defendant in order to preserve a fair trial." *Id.*, quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 237, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

{¶ 46} In the case at bar, Johnson was released on bond from Ohio custody on June 3, 2011. It is undisputed that at that point in time, the charges in the Ohio indictment against him were still untried. According to Defendant's Exhibit C, as a condition of his parole, Johnson was to return to "Penn Pavilion," a residential treatment facility in Pennsylvania in the event he

posted bond. According to Defendant's Exhibit D, Johnson arrived at the residential treatment facility in Pennsylvania on June 13, 2011.

{¶ 47} We find the case sub judice to be analogous to a Missouri court of appeals case, *State v. Vinson*, 182 S.W.3d 709 (Mo.App. 2006). In *Vinson*, a state attorney executed a written request for temporary custody of defendant pursuant to the IAD. *Id*. at 710. In compliance with the requirements of Article IV of the IAD, federal authorities granted Missouri temporary custody of Defendant. *Id.* Two days after defendant arrived in Missouri, the defendant posted a $10,000 bond. *Id.* The pre-trial Release Commissioner approved the transaction. *Id.* Thereafter, Vinson was returned to the federal penitentiary in Marion, Illinois by members of the Metropolitan St. Louis Police Department without the knowledge of the state attorney's office. *Id*.

{¶ 48} The Missouri appeals court ruled that defendant's return to federal custody was the result of his voluntary, affirmative actions. *Id*. at 713. The court concluded:

Here, Defendant's voluntary, affirmative act of posting bond resulted in his being transported back to federal custody. Although Defendant did not specifically request to be returned to federal custody, his act of posting bond resulted in his return to the federal penitentiary. We find this act constituted an affirmative request for treatment in a manner contrary to the IAD. Pursuant to the IAD agreement, Defendant agreed that the agreement: shall constitute a consent by me to the production of my body in any court where my presence may be required in order to effectuate the purposes of the Interstate Agreement on Detainers Act and a further consent voluntarily to be returned to the institution in which I am now confined.

Thus, Defendant agreed to remain in custody and by posting bond in an attempt to be released or cause his return to federal custody, Defendant acted in a manner contrary to the IAD.

Furthermore, at the hearing on his motion to dismiss, Defendant testified that he wanted to go back to federal custody to finish his federal sentence and he stated that he knew he would have to return to the federal penitentiary and "could not leave custody." By posting bond which caused his return to federal custody, and thereby requesting treatment contrary to the IAD, Defendant waived his protection under the anti-shuttling provision of the IAD. Whether Defendant was aware that he was waiving his IAD protections does not matter because there is no requirement that waiver of IAD protections must be made knowingly or intelligently.

*Id.*

{¶ 49} Distinguishing the facts in *Vinson* to the facts in *Bozeman*, the Missouri court of appeals stated:

In *Bozeman*, the state intentionally transported the defendant from federal custody to state custody for one day and then returned him to federal custody. The defendant in *Bozeman* took no action with regard to the shuttling and therefore, the state could not argue waiver, but instead argued that the violation was trivial. Here, unlike *Bozeman*, it was Defendant's own voluntary action, and not the State's action, that led to Defendant's return to federal custody.

*Vinson* at 714.

Thus, the court reversed the trial court's decision to dismiss the indictment against defendant, because of the defendant's voluntary and affirmative action to waive his protections under the IAD's anti-shuttling provision. *Id.*

{¶ 50} Here, Johnson also took the affirmative action of posting bond. Johnson posted the $25,000 bond on June 3, 2011. As previously mentioned, Johnson returned to a Pennsylvania residential treatment center on June 13, 2011. As the court in *Vinson* concluded, we also find that Johnson's action of posting bond waived his protections under the IAD's anti-shuttling provision. Johnson's own actions resulted in his return to Pennsylvania in accordance with his parole agreement that if he posted bond he had to report to the residential treatment facility.

{¶ 51} Therefore, finding that Johnson affirmatively waived his protections under the IAD Article IV(e)'s anti-shuttling provision, we overrule his second assignment of error.

**E. Assignment of Error No. 3- The IAD's 120-Day Limitation Pursuant To Article IV Was Not Violated.**

{¶ 52} Lastly, Johnson argues that the trial court failed to bring him to trial within the 120-day time period required by Article IV(c) of the IAD. We disagree.

{¶ 53} According to Article IV(c) of the IAD, "trial shall be commenced within one hundred twenty days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance." R.C. 2963.30. Johnson arrived in Ohio on or around May 9, 2011. Accordingly, to meet the IAD's 120-day period, the trial had to commence on September 6, 2011.

{¶ 54} When a defendant's trial counsel agrees to a trial date beyond the IAD, Article IV(c)'s 120-day statutory period, defendant's rights under that provision of the IAD are waived.

*State v. Golden*, 177 Ohio App.3d 771, 2008-Ohio-3227, 896 N.E.2d 170, ¶ 17. In citing the

speedy trial waiver rule articulated by the United States Supreme Court in *New York v. Hill*, 528

U.S. 110, 120 S.Ct. 659, 145 L.Ed.2d 560, the Third District stated the following:

> The court in *Hill* reasoned that the language of IAD, Article III(a) supports the
>
> general rule that scheduling matters are made by agreement of counsel. 528 U.S.
>
> at 115, 120 S.Ct. 659, 145 L.Ed.2d 560. The court noted that "[i]n allowing the
>
> court to grant 'good-cause continuances' when either 'prisoner or his counsel' is
>
> present, [the IAD] contemplates that scheduling questions may be left to counsel."
>
> (Emphasis sic.) *Id*. Furthermore, the court acknowledged that as a practical
>
> matter, counsel "is in a position to assess the benefit or detriment of the delay to
>
> the defendant's case," and only counsel can determine whether the defense would
>
> be prepared for trial. *Id*. Thus, the court found that "[r]equiring express assent
>
> from the defendant himself for such routine and often repetitive scheduling
>
> determinations would consume time to no apparent purpose." 528 U.S. at 115,
>
> 120 S.Ct. 659, 145 L.Ed.2d 560.
>
> Although the IAD time limitation in this case is 120 days, and the IAD time
>
> limitation in *New York v. Hill*, 528 U.S. 110, 120 S.Ct. 659, 145 L.Ed.2d 560, was
>
> 180 days, we find *Hill*'s rationale persuasive for several reasons. First, like Article
>
> III(a) in *Hill*, the text of Article IV(c) provides for "good cause" continuances
>
> provided either "the prisoner or his counsel" is present; and therefore, this IAD
>
> provision similarly "contemplates that scheduling questions may be left to
>
> counsel." (Emphasis added.) Article IV(c); *Hill*, 528 U.S. at 115, 120 S.Ct. 659,
>
> 145 L.Ed.2d 560, citing Article III(a). Second, *Hill*'s rationale regarding counsel's

role in scheduling is applicable without regard to the particular statutory time limitation. 528 U.S. at 115, 120 S.Ct. 659, 145 L.Ed.2d 560. Third, federal circuit courts have applied *Hill*'s waiver rule to IAD, Article IV(c)'s 120–day time limitation. *Wells v. Withrow* (C.A.6, 2006), 195 Fed.Appx. 425, 428; *Caniff v. Moore* (C.A.11, 2001), 269 F.3d 1245. Fourth, federal trial courts have also applied *Hill*'s waiver rule to IAD, Article IV(c). *Felder v. Quarterman* (S.D.Tex.2006), Civ. No. H–06–0794, 2006 WL 2365568, at *4–5; *Keith v. Weber* (D.S.D.2006), No. 05–4175, 2006 WL 1367363, at *8. Fifth, other Ohio appellate courts have either applied *Hill*'s waiver rule to IAD, Article IV(c) or, at least, have acknowledged the rule's application. *State v. Ward* (Sept. 25, 2000), 12th Dist. No. CA99–12–114, 2000 WL 1370993, at *2–3; *State v. Baranski*, 4th Dist. No. 04CA2971, 2005-Ohio-4956, 2005 WL 2296644, ¶ 5–6 (acknowledging the application of *Hill*'s rule but finding no record of counsel's consent to a trial date beyond the 120–day limitation).

{¶ 55} In this case, a judgment entry was filed on August 1, 2011, stating, "Upon motion of the Defendant and for good cause shown the Court hereby grants the parties [sic] motion for a continuance of the motions hearing [Johnson's motions to suppress] date herein from July 14, 2011 to the 21st day of September, 2011* * *." Johnson's counsel signed the entry. Therefore, Johnson agreed to continue this case to September 21, 2011, a date beyond the IAD, Article IV(c)'s 120-day statutory period. Consequently, Johnson waived any claimed violation of the 120-day speedy trial time period.

{¶ 56} Furthermore, it is clear that the 120-day speedy trial period was tolled to prevent a violation of the provision. In *Golden*, the Third District stated:

IAD speedy-trial time tolls in the same manner as time tolls under the Federal

Speedy Trial Act, 18 U.S.C. 3161. *U.S. v. Collins* (C.A.9, 1996), 90 F.3d 1420,

1426–1427; *U.S. v. Cephas* (C.A.2, 1991), 937 F.2d 816, 819, certiorari denied

(1992), 502 U.S. 1037, 112 S.Ct. 884, 116 L.Ed.2d 788; *U.S. v. Odom* (C.A.4,

1982), 674 F.2d 228, 231, certiorari denied (1982), 457 U.S. 1125, 102 S.Ct.

2946, 73 L.Ed.2d 1341; *U.S. v. Robinson* (E.D.Mich.2003), 290 F.Supp.2d 808,

817, affirmed by *U.S. v. Robinson* (C.A.6, 2006), 455 F.3d 602; *U.S. v. Ellerbe*

(C.A.D.C., 2004), 372 F.3d 462, 468 (IAD speedy-trial time tolls for periods of

delay caused by defendant's own actions, including defendant's motions as

provided in Speedy Trial Act). *See also Young v. Mabry* (C.A.8, 1979), 596 F.2d

339, 343 (IAD speedy-trial time tolls when defendant is "legally or

administratively" unavailable for trial); *U.S. v. Roy* (C.A.7, 1987), 830 F.2d 628,

635 (same). Under the Speedy Trial Act, time is tolled for "delay resulting from

any pretrial motion, from the filing of the motion through the conclusion of the

hearing on, or other prompt disposition of, such motion." 18 U.S.C.

3161(h)(1)(F).

{¶ 57} Johnson filed three motions to suppress evidence on April 8, 2011, prior to his

arrival in Ohio. Johnson eventually withdrew the motions to suppress on September 27, 2011.

Accordingly, the 120-day period was tolled when Johnson arrived in Ohio and continued to be

tolled until September 27, 2011. Johnson's trial on the Ohio charges was scheduled to begin on

November 21, 2011. On November 16, 2011, Johnson filed his motion to dismiss alleging,

among the other violations of the IAD, that the 120-day period had passed. From September 27

to November 16 only 50 days had passed, well below the 120-day limit. Accordingly, the trial

court did not err when it denied Johnson's motion to dismiss based on a violation of the IAD

Article IV's 120-day provision.

{¶ 58} Johnson's third assignment of error is overruled.

### IV. Conclusion

{¶ 59} Having overruled Johnson's assignments of errors, we affirm the trial court's

decision to deny Johnson's motion to dismiss.

JUDGMENT AFFIRMED.

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED. Appellant shall pay the costs.

The Court finds that reasonable grounds existed for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J.: Concurs in Judgment and Opinion.
McFarland, J.: Concurs in Judgment Only.

For the Court

BY: _____
Marie Hoover, Judge

**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**